# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SALVADOR FLORES,

      **Plaintiff,**

    vs.                                    Civ. No. 16-279  KK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

     **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed September 7, 2016, in support of Plaintiff Salvador Flores's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and for Title XVI supplemental security income benefits.  On December 13, 2016, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion").  (Doc. 20.)  The Commissioner filed a Response in opposition on February 13, 2017 (Doc. 22), and Plaintiff filed a Reply on February 27, 2017.  (Doc. 23.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration.  Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

# I. Background and Procedural Record

Claimant Salvador Flores ("Mr. Flores") alleges that he became disabled on December 30, 2010, at the age of forty-six because of herniated cervical disc, right hand surgery, and eczema. (Tr. 169, 171, 214.[3]) Mr. Flores went to school in Mexico through the sixth grade (Tr. 61), and worked as a construction laborer. (248-259.)

On January 24, 2012, Mr. Flores protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 169-70, 171-80, 210.) Mr. Flores's applications were initially denied on July 25, 2012. (Tr. 69, 70, 71-83, 84-96, 116-19, 120-23.) They were denied again at reconsideration on June 25, 2013. (Tr. 98-113, 114, 115.) On June 25, 2013, Mr. Flores requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 135-36.) The ALJ conducted a hearing on May 29, 2014. (Tr. 40-68.) Mr. Flores appeared in person at the hearing with attorney Michael Armstrong. (*Id.*) The ALJ took testimony from Mr. Flores (Tr. 48-62), and an impartial vocational expert ("VE"), Sandra Trost. (Tr. 63-67.)

On September 5, 2014, the ALJ issued an unfavorable decision. (Tr. 23-34.) In arriving at her decision, the ALJ determined that Mr. Flores met the insured status requirements of the Act through December 31, 2017,[4] and that Mr. Flores had not engaged in substantial gainful

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on September 7, 2016.

[4] To receive benefits, a claimant must demonstrate disability prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

activity since his alleged disability onset date.[5]  (Tr. 25-26.)  The ALJ found that Mr. Flores suffered from severe impairments of status post fusion of C5 to C7 vertebrae, depression, borderline intellectual functioning, degenerative joint disease of the right elbow, and degenerative joint disease of the right knee.  (Tr. 26.)  However, the ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 26-27.)

Because she found that Mr. Flores's impairments did not meet a Listing, the ALJ then went on to assess Mr. Flores's residual functional capacity ("RFC").  The ALJ stated that

> [a]fter careful consideration of the entire record, I find that since December 30, 2010, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can only occasionally climb, balance, and stoop; he cannot kneel, crouch, or crawl; he can frequently but not constantly handle and reach; and he can make simple work related decisions with few workplace changes.

(Tr. 27.)  Based on the RFC and the testimony of the VE, the ALJ concluded that Mr. Flores was not capable of performing his past relevant work, but that considering Mr. Flores's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, and he was therefore not disabled.  (Tr. 32-34.)

On February 10, 2016, the Appeals Council issued its decision denying Mr. Flores's request for review and upholding the ALJ's final decision.  (Tr. 1-3.)  On April 11, 2016, Mr. Flores timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[5] The ALJ noted that Mr. Flores worked after his alleged onset date, but that it did not amount to substantial gainful activity.  (Tr. 25-26.)

## II.  <u>Standard of Review</u>

The Court will not disturb the Commissioner's denial of disability benefits if the final decision[6] is supported by substantial evidence and the Commissioner applied the correct legal standards to evaluate the evidence.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  In conducting its review, the Court meticulously examines the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  In other words, the Court does not reexamine the issues *de novo,* and the Court "may not displace the agency's choice between two fairly conflicting views," even if it would have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007); *see also Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992).  Substantial evidence is "more than a scintilla but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

---

[6] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and the Court will therefore review the ALJ's decision as the Commissioner's final decision.

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's decision should discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III. Applicable Law and Sequential Evaluation Process

A claimant is disabled under the Social Security Act if that individual has a severe medically determinable physical or mental impairment or impairments which can be expected to result in death or have lasted or can be expected to last for a continuous period of twelve months and that render the claimant unable to engage in any substantial gainful work in the national economy. 42 U.S.C. § 423(d)(1)(A) & (2)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of proof at the first four steps and must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[7] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant can show that his impairment meets or equals a listed impairment at step three, the claimant is presumed disabled. However, if at step three the claimant's impairment does not meet or equal a listed impairment, before moving on to step four

---

[7] 20 C.F.R. pt. 404, subpt. P. app. 1.

of the analysis, the ALJ must consider all of the relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1)-(3). This is the claimant's residual functional capacity ("RFC") which the ALJ uses to determine whether the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1545(a)(1) & (a)(3), 404.1520(a)(4), 404.1520(e), 416.945(a)(1) & (a)(3); 416.920(a)(4), 416.920(e). If the claimant establishes that he cannot perform his past relevant work, the burden of proof then shifts to the Commissioner at step five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Id.*; *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10ᵗʰ Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10ᵗʰ Cir. 2006). "This is true despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10ᵗʰ Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

# IV. <u>Analysis</u>

Mr. Flores asserts four arguments in support of his Motion as follows: (1) the ALJ failed to give legitimate reasons for rejecting the opinion of consultative examining physician John R. Vigil, M.D.; (2) the ALJ offered no explanation for failing to include all of the nonexertional limitations assessed by State agency nonexamining consultants Scott Walker, M.D., and Ralph Robinowitz, Ph.D.; (3) the ALJ failed to include a function-by-function assessment of Mr. Flores's inability to communicate in English; and (4) the ALJ failed to resolve the conflict between the VE's testimony and the Dictionary of Occupation Titles ("DOT") regarding Mr. Flores's limitation to simple work-related decisions and his ability to do the level two and level three reasoning jobs the VE identified.  (Doc. 20 at 15-26.)  The Court finds grounds for remand as discussed below.

## A. <u>The ALJ Improperly Rejected Some But Not All of the Nonexamining State Agency Consultants' More Restrictive Section I Findings Without Explanation</u>

Mr. Flores argues that the ALJ erred by failing to include certain of the nonexamining State agency consultants' Section I moderate limitations, and that had she done so, she would have assessed a more restrictive mental RFC.  (Doc. 20 at 18-21.)  Specifically, Mr. Flores argues that the ALJ failed to incorporate moderate limitations based on his pain, borderline intellectual functioning, and limited English skills, all of which impact his ability to sustain concentration and persistence.  (*Id.*)  The Commissioner contends that the consultants' Section III narrative assessments demonstrate that they considered their Section I moderate limitation findings, and that the ALJ reasonably relied on the consultants' Section III narrative assessments in determining Mr. Flores's RFC.  (Doc. 23 at 11-12.)

On July 25, 2012, nonexamining State agency medical consultant Scott Walker, M.D., reviewed Mr. Flores's medical records and prepared a Psychiatric Review Technique[8] and a Mental Residual Functional Capacity Assessment ("MRFCA"). (Tr. 75-76, 80-81, 88-89, 93-94.) In Section I of the MRFCA, Dr. Walker found that Mr. Flores had no social interaction limitations. (Tr. 81, 94.) Dr. Walker found that Mr. Flores was *not significantly limited* in his ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; and (4) work in coordination with or in proximity to others without being distracted by them. (Tr. 80, 93-94.) Based on Mr. Flores's pain, borderline intellectual functioning, and/or limited English skills, Dr. Walker found that Mr. Flores had *moderate limitations* in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (8) respond appropriately to changes in the work setting; (9) be aware of normal hazards and take appropriate precautions; (10) travel in unfamiliar places or use public transportation; and (11) set realistic goals or make plans independently of others. (Tr. 80-81, 93-94.) In Section III of the MRFCA, Dr. Walker assessed that

---

[8] "The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

[t]he allegations are credible. But [claimant] may have some limitations related to pain and Borderline intellectual functioning as well as limited English skills.

The claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

(Tr. 81, 94.) On June 19, 2013, at reconsideration, Ralph Robinowitz, Ph.D., repeated verbatim Dr. Walker's findings and narrative assessment. (Tr. 105-06, 109-11.)

The MRFCA form is used at the initial and reconsideration levels of the administrative process to document a claimant's mental RFC.[9] POMS DI 24510.005.B.2.; POMS DI 24510.060.A.1; POMS DI 24515.007.3. The psychological consultant makes administrative findings of fact that are based on the evidence, but are not in themselves evidence at the level of the administrative review process at which they are made. 20 C.F.R. §§ 404.1527(e)(1)(i), 416.927(e)(1)(i); POMS 24510.005.A.; POMS 24515.007.3.a. Section I of the MRFCA provides a worksheet to ensure that the preparer has considered all of the listed pertinent mental activities in light of a claimant's degree of limitation. POMS DI 25020.010.B.1. Section III is for "explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS DI 24510.060.B.4.a. and B.4.b. "Adjudicators must take the RFC assessment in Section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work." POMS DI 25020.010.B.1.

---

[9] Because of the complexity of the mental disorder evaluation, a special form is used to document the mental residual functional capacity decision, *i.e.,* what an individual can do despite his or her impairment. POMS DI 24510.060A.1. "If there are any changes in the functional limitations at reconsideration, the initial level MRFCA cannot be adopted and a new one will have to be prepared." POMS DI 24510.066.B.

At the ALJ and Appeals Council levels of review, the consultants' administrative findings of fact become *opinion evidence* that the ALJ must evaluate and weigh using the relevant regulatory factors. 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii) (describing evidence at the ALJ level and Appeals Council levels); 20 C.F.R. §§ 404.1527(e)(2)(i) and (ii), 416.927(e)(2)(i) and (ii) (describing ALJ's responsibility for reviewing opinion evidence); *see also* POMS DI 24515.007.3.b. (the ALJ will consider findings of fact made by medical and psychological consultants as expert opinion evidence); POMS DI 24515.013.A. (findings of fact made by State agency medical and psychological consultants become opinions at the ALJ and Appeals Council levels of review). Other than the ultimate determination about whether or not a claimant is disabled, the ALJ must consider the entirety of a State agency consultant's findings as medical evidence. 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (holding that while Section I worksheet observations are perhaps less useful to an ALJ than a doctor's Section III narrative RFC assessment that has adequately encapsulated worksheet observations, they are nonetheless medical evidence which cannot be ignored). An ALJ cannot "turn a blind eye to moderate Section I limitations," and is required to determine whether the Section III narrative adequately described the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts any of the limitations marked in Section I. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[10] An ALJ is not bound by any findings or RFC assessments made by State agency medical consultants. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); POMS DI 24510.001.A.2.b.; *see also* SSR 96-8p, 1996 WL 374184, at *2 (RFC is assessed at each level of the administrative reviewed process based on all of the relevant evidence in the case record).

---

[10] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Here, contrary to the Commissioner's argument, the ALJ's RFC is *inconsistent*, at least in part, with the consultants' Section III narrative assessments. The ALJ accorded great weight to Dr. Walker's and Dr. Robinowitz's opinions and determined that Mr. Flores could make "simple work-related decisions with few workplace changes." (Tr. 27.) In so doing, however, she rejected certain of the consultants' Section III assessments while adopting others without explanation. This is error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to finding of nondisability.").[11] For example, in the area of sustained concentration and persistence, the consultants assessed in Section III that Mr. Flores could "make simple decisions and attend and concentrate for two hours at a time." The ALJ adopted their assessment, in part, and limited Mr. Flores to making simple work-related decisions.[12] In the area of adaptation, the consultants assessed in Section III that Mr. Flores could respond appropriately to changes in a routine work setting.[13] In this area, however, the ALJ *adopted* the consultants' more restrictive Section I findings and assessed that Mr. Flores could have few

---

[11] There is no dispute that the record supports Mr. Flores had limited English skills and was diagnosed with borderline intellectual functioning and impaired cognitive ability. (Tr. 26, 30, 32, 81, 94, 111, 211, 422-25.)

[12] The ALJ did not address the contradiction between the consultants' Section I findings and Section III assessment that Mr. Flores was moderately limited in his ability to make simple decisions, but yet could make simple decisions. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (a moderate limitation is not the same as no impairment at all); *see also Carver*, 600 F. App'x at 619 (an ALJ is required to determine whether the Section III narrative adequately described the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts any of the limitations marked in Section I). The consultants also found in the area of sustained concentration and persistence that Mr. Flores was moderately limited in his ability (1) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (2) sustain an ordinary routine without special supervision, and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but did not describe the effect of these limitations in their Section III assessments. The ALJ's mental RFC similarly did not incorporate these limitations and the ALJ did not explain why she rejected these limitations as having no effect on Mr. Flores's ability to do work-related mental activities. *Id.*

[13] The ALJ also did not address the contradiction between the consultants' Section I findings that Mr. Flores was moderately limited in all four measurable areas of adaption, yet assessed in Section III that he could respond appropriately to workplace change. *Haga*, 482 F.3d at 1208; *Carver*, 600 F. App'x at 619.

workplace changes. This amounts to picking and choosing. The Court therefore agrees with Mr. Flores that the ALJ should have explained why she rejected the consultants' more restrictive Section I moderate limitations in the area of sustained concentration and persistence while adopting them in the area of adaptation.

Additionally, the Court is not persuaded that the ALJ's error is harmless. Here, the VE testified that if Mr. Flores were off task due to greater restrictions in the area of sustained concentration and persistence that it would eliminate all work in the regional and national economy. (Tr. 67.) As such, the error is not harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (the Court finds harmless error only when it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

For these reasons, the Court finds this case requires remand so that the ALJ can explain the evidentiary support for her RFC determination. *Haga*, 482 F.3d at 1208.

**B.      The ALJ Failed to Resolve the Conflict Between the VE's Testimony and the Job Descriptions in the DOT**

Mr. Flores argues that the ALJ's step five findings are not supported by substantial evidence because the ALJ failed to resolve the conflict between the VE's testimony and the job descriptions in the DOT. (Doc. 20 at 24-26.) Mr. Flores explains that the jobs the VE identified based on the ALJ's hypothetical require reasoning levels that are incompatible with his limited ability to speak English and his inability to read English. (*Id.*) As such, Mr. Flores asserts there was an apparent conflict between the VE's testimony and the DOT that the ALJ had a duty to resolve. (*Id.*) The Commissioner contends that because Mr. Flores's lack of fluency in English was not caused by any physical or mental impairment and was not part of the ALJ's RFC, there was no apparent conflict to resolve. (Doc. 22 at 14.) The Commissioner further contends that to

the extent Mr. Flores is arguing there was a conflict between the VE's testimony and the ALJ's RFC limitation to "simple, *i.e.,* unskilled work," any error was harmless because the VE identified two jobs with level two reasoning which are not inconsistent with a limitation to simple work. (*Id.* at 15.) The Commissioner also noted that it is the specific vocational preparation (SVP)[14] rating in the DOT, not the general educational development (GED)[15] ratings, that describe the skill level required for a particular job. (*Id.* at 16-17.) Finally, the Commissioner contends that the Medical-Vocational Guidelines expressly contemplate that people who are illiterate or unable to communicate in English can perform a number of unskilled jobs. (*Id.* at 17.)

Here, the ALJ questioned the VE as follows:

ALJ: Are you aware that your testimony needs to be in accord with the Dictionary of Occupational Titles and its companion publications?

VE: Yes.

ALJ: Will you tell me about any variation between your testimony and those publications?

VE: I will.

. . .

ALJ: . . . So then assuming a person of the same, education, and work history as the claimant; is limited to light work; can occasionally climb, balance, and stoop, but never kneel, crouch, or crawl; can frequently but not constantly reach and handle –

---

[14] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles – Appendix C – Components of the Definition Trailer, 1991 WL 688702 (2008).

[15] "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study. The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." Dictionary of Occupational Titles – Appendix C – Components of the Definition Trailer, 1991 WL 688702 (2008).

VE:     I'm sorry.  Did you say frequently reach –

ALJ:    Frequently reach and handle.

VE:     All right.

ALJ:    -- can make only simple work-related decision with few workplace
        changes – obviously that eliminates our medium 2, very heavy past work.
        So are there other jobs in the regional or in the national economy which
        such a person could perform?

VE:     Because there's been an interpreter here during the hearing, so am I to
        then assume that he cannot speak English?

ALJ:    Well, he said he could speak some English, but could not read English.[16]

VE:     Oh, okay.  At the light SVP of 2, he could be a cashier II, 211.462-010.
        National jobs are 821,027.  He could be, at the light, SVP of 2, a fast food
        worker, 311.472-010.  National jobs are 1,091,043.  He could be, at the
        light, SVP of 2, a parking lot attendant, 915.473-010.  National jobs are
        21,834.

(Tr. 63, 65-66.)  The ALJ adopted the VE testimony regarding Mr. Flores's ability to work as a

cashier II, fast food worker and parking lot attendant and determined that it was consistent with

the information contained in the DOT.  (Tr. 33.)  As Mr. Flores points out, the DOT indicates

that the cashier II job has a reasoning level of three, which requires a worker to "[a]pply

commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic

form.   Deal with problems involving several concrete variables in or from standardized

situations."   (Doc. 20 at 25.)   The fast food worker and parking lot attendant jobs have a

reasoning level of two which requires a worker to "[a]pply commonsense understanding to carry

out detailed but uninvolved written or oral instructions.  Deal with problems involving a few

---

[16] Later, in her determination, the ALJ stated that for purposes of her analysis "the claimant was not able to
communicate in English" (Tr. 32), which suggests her hypothetical to the VE did not precisely relate Mr. Flores's
ability to communicate in English.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony
elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute
substantial evidence to support the Secretary's decision.")

concrete variables in or from standardized situations." (*Id.*) Mr. Flores argues the ALJ erred in failing to address the apparent conflict between his limited English skills and the reasoning demands of the jobs the VE identified.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling 00-4p and further clarified the ALJ's affirmative responsibility to ask about conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

The Commissioner first argues that because Mr. Flores's inability to communicate in English was not caused by any physical or mental impairment and was not part of the ALJ's RFC, there was no apparent conflict to resolve. The Court does not agree. The ALJ assessed Mr. Flores's mental RFC based on Dr. Walker's and Dr. Robinowitz's opinions, who limited Mr. Flores's mental functioning based on his borderline intellectual functioning and *limited English skills*. (Tr. 80-81, 93-94, 109-11.) As such, Mr. Flores's inability to communicate in English was part of the ALJ's mental RFC. Even if Mr. Flores's inability to communicate in English was not part of the ALJ's RFC, she was nonetheless required to consider his education

as a vocational factor in determining whether he could adjust to other work.  The regulations explicitly state that

> [i]f we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case.

20 C.F.R. §§ 404.1560(c)(1) and 416.960(c)(1); *see also* 20 C.F.R. §§ 404.1564(b)(5) and 416.960(b)(5) (a person's ability to communicate in English is considered as a vocational factor when evaluating what work, if any, they can do).  That said, and contrary to the Commissioner's assertion that the ALJ did not include this as part of her hypothetical to the VE, the ALJ specifically referred to Mr. Flores's education[17] in her hypothetical and told the VE that Mr. Flores could speak some English but could not read English.  (Tr. 65-66.)  The ALJ also stated in her determination that for purposes of her analysis, "the claimant is not able to communicate in English."  (Tr. 32.)  Although the ALJ asked the VE at the hearing to tell her about any variations between her testimony and the DOT (Tr. 63), there was no acknowledgement of any conflict with the DOT nor any explanation elicited regarding the conflict between Mr. Flores's inability to communicate in English and the jobs the VE identified that require him to either "carry out instructions furnished in written, oral, or diagrammatic form" or "carry out detailed but uninvolved written or oral instructions" all presumably in English.  For these reasons, the Commissioner's argument that there was no conflict to resolve is without merit.

The Commissioner next argues that any reliance on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), should be rejected because the *Hackett* court addressed whether a

---

[17] Mr. Flores testified that he went to school in Mexico through the sixth grade.  (Tr. 81.)

limitation to simple *tasks* was inconsistent with level three reasoning jobs and the issue here is simple *decisions*. (Doc. 22 at 15.) The Court is not persuaded. In *Hackett,* the Tenth Circuit agreed with the claimant that there was an apparent conflict between a claimant's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified. *Hackett*, 395 F.3d at 1176. The Court there remanded to allow the ALJ to address the conflict. *Id.* Although the RFC limitation here is slightly different than in *Hackett*, *i.e.,* simple decisions versus simple tasks, the Commissioner has offered no persuasive argument why *Hackett* would not apply. Moreover, the Tenth Circuit has applied *Hackett* where claimants were limited to simple *work*,[18] and recently applied *Hackett* where a claimant was limited to simple *instructions*.[19] Thus, the Court agrees that there was an apparent conflict between Mr. Flores's limitation to simple work-related decisions and the level-three reasoning required of the cashier II job that the ALJ failed to address. This is clear error.

The Commissioner goes on to argue that even if *Hackett* were to apply, that any error with regard to the sole level-three reasoning job was harmless because the VE identified two jobs with level-two reasoning which are not inconsistent with a limitation to do simple work. The Court is not persuaded. Although the Tenth Circuit has not directly addressed this issue, it touched on it recently in the case of *Paulek v. Colvin,* 662 F. App'x 588 (10th Cir. 2016) (unpublished). In *Paulek*, the issue was whether the claimant's limitation to understanding, remembering, and carrying out simple *instructions* rendered him unable to perform reasoning level three jobs. *Paulek*, 662 F. App'x at 594. The Court described the one, two and three reasoning levels as defined by the DOT, and acknowledged its holding in *Hackett* that a

---

[18] *Garcia v. Barnhart*, 188 F. App'x 760, 766-67 (10th Cir. 2006) (unpublished), and *Pritchett v. Astrue*, 220 F. App'x 790, 793 (10th Cir. 2007) (unpublished).

[19] *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished).

limitation to "simple and routine work *tasks* . . . seems inconsistent with the demands of level-three reasoning." *Id.* (quoting *Hackett,* 395 F.3d at 1176) (emphasis added)).  The Court went on to say

> [w]hile we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, *the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning*.

*Id.* (quoting *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)) (emphasis added).  The Tenth Circuit held there was an apparent conflict between the VE's testimony and the DOT, and remanded so that the Commissioner could "elicit a reasonable explanation as how [claimant could] perform two level-three-reasoning jobs with a limitation to carrying out simple instructions[.]"  *Id.*  While this case is not dispositive as to the alleged conflict here, it is nonetheless instructive that the Tenth Circuit has considered there may be situations where a limitation to "simple" could preclude even level-two reasoning jobs.  Moreover, the Tenth Circuit determined in *Hackett* that level-two reasoning jobs *appeared* to be more consistent with the ability to do simple and routine work tasks, but did not decisively foreclose the possibility there may be factual circumstances where level two reasoning jobs could be inconsistent with a claimant's ability to perform simple tasks.  *Hackett*, 395 F.3d at 1176.  Given the facts of this case and the bases of the ALJ's mental RFC, and in light of the Tenth Circuit's recent holding in *Paulek*, the Court is persuaded that further inquiry is warranted into whether Mr. Flores's limitation to simple work-related decisions is consistent with level two reasoning jobs.

The Commissioner also contends that it is the SVP rating, and not the GED reasoning level, that describes the skill level required for a particular job, such that there was no apparent conflict between Mr. Flores's limitation to simple work-related decisions and the SVP 2 jobs the VE identified.  While the Court agrees that the SVP level measures the skill level necessary to

perform a particular job, a claimant's skill level is not the only factor an ALJ considers in determining whether there are jobs available in significant numbers in the national economy that a claimant can do. 20 C.F.R. §§ 404.1560(c)(1) and 416.960(c)(1). Thus, even with acknowledging that the GED ratings generally correspond to a person's level of formal and informal education that makes them suitable for a job, *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), a claimant's education is a vocational factor that bears on the ALJ's ultimate determination of whether a claimant can adjust to other work at step five. *See* 20 C.F.R. §§ 404.1564(b)(2) and (5) and 416.964(b)(2) and (5) (defining marginal education and inability to communicate in English as vocational factors). Moreover, the Court is not persuaded that merely identifying jobs that are unskilled neutralizes or supplants the reasoning level conflict as the Commissioner argues. *See McHerrin v. Astrue*, 2010 WL 3516433, at *6, 156 Soc. Sec. Rep. Serv. 598 (E.D. Pa., Aug. 31, 2010) (explaining that a number of courts have found the DOT's reasoning levels are much more indicative of whether a claimant is capable of performing more than simple, repetitive tasks) (internal citations omitted)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1290, at n. 3 (10th Cir. 2012) ("[w]hile the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions – which 'are not skills, but, rather, general prerequisites for most work at any skill level'" (quoting *Wayland v. Chater*, 76 F.3d 394 (10th Cir. 1996) (unpublished))); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding that a limitation to unskilled work did not account for several effects of mental impairment; *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (explaining that many unskilled jobs require more than the mental capacity to follow simple instructions); *Cooper v. Barnhart*, 2004 WL 2381515, *4 (N.D. Ola. Oct. 15, 2004) (finding that a limitation to simple tasks appears more squarely addressed by a job's reasoning level, than to

its SVP level, which focuses on vocational preparedness necessary to perform the job); SSR 85-15, 1985 WL 56867, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."). For these reasons, the Court declines to adopt the Commissioner's position that the GED reasoning levels can be disregarded when addressing the mental demands of jobs listed in the DOT and that identifying unskilled jobs eliminates any conflicts and accommodates a claimant's limitation to do simple work.

Finally, the Commissioner argues that because the Medical-Vocational Guidelines expressly contemplate that people who are illiterate or unable to communicate in English can perform a number of unskilled jobs, there can be no apparent conflict. The regulations explain that while illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. pt. 404, subpt. P. app. 2., § 200(h)(4)(i). The Commissioner's argument, however, necessarily fails because here all of the jobs the VE identified require significant contact and/or interaction with people. According to Appendix B of the DOT, the fifth number of the nine-digit code reflects the job's relationship to people. DOT, Appendix B – Explanation of Data, People, and Things, 1991 WL 688701. The cashier II job has a people rating of 6, which indicates that the worker will be involved in "[t]alking with and/or signaling people to convey or exchange information. Including giving assignments and/or directions to helpers or assistants." *Id.* The fast food worker and parking lot attendant jobs have a people rating of 7, which indicates that the worker

will "[a]ttend to the needs or requests of people . . . or the expressed or implicit wishes of people. Immediate response is involved." *Id.* Therefore, there is a degree of interaction with people in all of the jobs the VE identified that calls into question Mr. Flores's ability to perform the work-related mental activities they require in light of his inability to communicate in English.

For these reasons, the Court finds the ALJ failed to resolve the conflicts between Mr. Flores's limitation to simple work-related decisions and the level-two and level-three reasoning jobs the VE identified before relying on the VE's testimony as substantial evidence to find that Mr. Flores was not disabled. *Haddock*, 196 F.3d at 1091; SSR 00-4p, 2000 WL 1898704, at *4. As such, the Court must remand to allow the ALJ to address the conflicts.

**C. Remaining Issues**

The Court will not address Mr. Flores's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V. Conclusion**

For the reasons stated above, Mr. Flores's Motion to Reverse or Remand for Rehearing is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**
**Presiding by Consent**